**DAY & ZIMMERMANN, INC., et al.,
Petitioners,**

v.

**Robert S. CALVERT, Comptroller of Public
Accounts of the State of Texas,
Respondent.**

**No. B–4512.**

Supreme Court of Texas.

Jan. 29, 1975.

Rehearing Denied March 5, 1975.

Atchley, Russell, Waldrop & Hlavinka, Charles J. Hlavinka, Texarkana, for petitioners.

Bennet N. Hollander, U. S. Dept. of Justice, Washington, D. C., for intervenor, United States.

John L. Hill, Atty. Gen., Lewis A. Jones, Asst. Atty. Gen., Austin, for respondent.

DENTON, Justice.

Day & Zimmermann, Inc., plaintiffs below, brought this suit to recover taxes paid under protest to the State Comptroller of Public Accounts on materials procured in the performance of its contract with the United States Government, who has intervened and is a party to this action. The trial court entered judgment for Day & Zimmermann allowing recovery of $112,668.42 in taxes, with interest, and an additional sum representing interest on another tax erroneously collected by the Comptroller which had been previously refunded. The court of civil appeals affirmed as to the recovery of interest with respect to the previously refunded tax since the parties on appeal confined the issues to that part of the judgment awarding recovery of the $112,668.42 taxes with interest. This latter portion of the trial court's judgment was reversed and judg-

ment rendered that Day & Zimmermann take nothing by its suit for refund of taxes under the holding of the court of civil appeals that plaintiff purchased materials in the capacity of an independent contractor and not as an agent of the United States Government thereby precluding the applicability of any exception to the levy of the State sales tax. Tex.Civ.App., 504 S.W.2d 945. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Day & Zimmermann is the operating contractor of a Government owned ordinance installation which is known as the Lone Star Army Ammunition Plant situated near the City of Texarkana, Texas. All the land, buildings and other structures comprising the Lone Star Plant are wholly owned by the United States Government and under the command of a military officer. Under its contract with the United States, Day & Zimmermann is responsible for the loading, assembling and packaging of ammunition and related components as well as the handling of the mechanics of procurement of all necessary materials, supplies, equipment and services.

The prime contract with the Government is based on what is known as a cost-plus-award-fee arrangement, whereby Day & Zimmermann receives, in addition to a reimbursement for its cost of operation, a fee for each item produced and accepted by the Government and an award fee based on such factors as cost savings, meeting delivery schedules and maintenance of a safety record. As costs are incurred in the performance of the prime contract, Day & Zimmermann submits to Government representatives vouchers requesting payment of such costs. In the normal course of business and as provided in the contract, payment is requested before there has been any actual disbursement of the funds. The voucher is supported by a statement of costs which have been incurred or a listing

of checks that had been written in advance. Once checks in payment of the vouchers were received by Day & Zimmermann, goods purchased were paid for.

Materials and supplies purchased are inspected upon delivery by personnel of Day & Zimmermann with representatives of the Federal Government monitoring these inspections on a random basis. Immediately upon acceptance, the materials are identified whenever feasible by labeling them "US LSAAP" (United States—Lone Star Army Ammunition Plant). Under the terms of its contract, Day & Zimmermann is required to maintain an inventory of all property located at the ordnance installation and to carry out a program of maintenance, repair, protection and preservation of all such property. However, in the event of loss, destruction, damage or wear beyond repair of plant equipment, the operating contractor is not held financially responsible. Liability would only arise if such items are lost, destroyed or damaged directly through willful misconduct or lack of good faith on the part of a major official of Day & Zimmermann.

Pursuant to the provisions of the Limited Sales, Excise and Use Tax Act, Title 122A, Chapter 20, Tex.Tax.—Gen.Ann. Stats., and the Local Sales and Use Tax Act, Article 1066c, Vernon's Tex.Rev.Civ. Stat.Ann., the Comptroller conducted an audit on Day & Zimmermann for the period beginning April 1, 1964, and ending October 1, 1968.[1] The audit involved the tangible personal property, not including any of the component parts that went into the finished product, purchased and consumed by the operating contractor in the performance of its contract with the Federal Government. Upon the basis of this audit the Comptroller made a deficiency determination which was assessed against Day & Zimmermann. Upon payment, the plaintiff filed an administrative claim for refund of the amount paid, however, after a

---

1. All statutory references hereafter shall be from the Limited Sales, Excise and Use Tax Act, Chapter 20, Taxation-General, Vernon's Annotated Civil Statutes, unless otherwise indicated.

hearing on the matter, the deficiency determination was upheld by the Comptroller.

■■ · As previously stated, the court of civil appeals decision turned on the determination of the question of whether Day & Zimmermann, in all phases of its performance including the procurement of materials, acted as an independent contractor making it liable for the sales taxes, or, whether the plaintiff acted as an agent of the United States so as to cause these sales to be exempt from tax under articles 20.04 (C) and (H). In support of that court's conclusion that Day & Zimmermann was not an agent of the Federal Government, the prime contract with the Government provides:

> [T]he contractor, as an independent contractor and not as an agent of the Government, shall, upon the terms, conditions and provisions herein set forth, furnish all personnel, labor, equipment, supplies, materials . . . .

The "Terms and Conditions" attached to the purchase order form used by Day & Zimmermann in procuring goods and services pursuant to their contract with the Federal Government also lead to the conclusion that Day & Zimmermann was the entity to whom the title to the goods passed, rather than the Government. The "Definitions" section states that " 'Buyer' means Day & Zimmermann" and the section entitled "Buyer's Status" reads

> All rights and claims of every kind and nature, including the right to title and ownership of the goods or services covered by this Purchase Order, may be assigned and transferred by Day & Zimmermann, Inc. to the United States Government; however, this Purchase Order does not bind or purport to bind the United States Government or any officer thereof.

This provision plainly contemplates that Day & Zimmermann is to purchase, in its own name and on its own credit, all the materials required and that the Government is not to be bound by the purchase contracts, but rather is obligated only to reimburse the plaintiff according to the prime contract. *See* Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941). In view of these facts we agree that Day & Zimmermann assumed the status of an independent contractor and that no direct sales by the vendors to the Federal Government, as contended by the plaintiff, resulted from this arrangement.

Day & Zimmermann alternatively contends that if it was not an agent of the Federal Government, procuring direct sales of materials to the United States, that the sales were nevertheless not taxable under the "Sale for Resale" exemption found in article 20.04(O).[2] This exemption states in part:

> Sale for Resale: Leasing or Renting
>
> (1) There are exempted from the taxes imposed by this Chapter the receipts from all sales for resale, leasing, renting or for transfer as an integral part of a taxable service rendered in the regular course of business.

Article 20.01, the definitional section of the Limited Sales, Excise and Use Tax Act, defines a "Sale for Resale" in subdivision (S) as being

> A sale of tangible personal property to any purchaser who is purchasing said tangible property for the purpose of reselling it within the geographical limits of the United States of America, its territories and possessions, in the normal course of business either in the form or condition in which it is purchased, or as an attachment to, or integral part of, other tangible personal property.

■■ We must determine, therefore, whether a sale took place between the vendor and Day & Zimmermann, and thereafter, whether a sale between Day & Zim-

---

2. It should be noted that this exemption is also incorporated by reference into the Local Sales and Use Tax Act, Article 1066c under section 6C(1) of that act.

mermann and the Federal Government occurred. The court of civil appeals, while holding that Day & Zimmermann did acquire title, however fleeting, did not discuss when a resale, if any, took place. We again turn to the definitional section where the term "sale" is defined in article 20.-01(K)(1)(a):

> "Sale" means and includes any transfer of title or possession, or segregation in contemplation of transfer of title or possession, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration.

This being a specific definition by the legislature of the term "sale," such is binding on the courts. Hurt v. Cooper, 130 Tex. 433, 447–448, 110 S.W.2d 896, 904–905 (1937). As construed by this Court in Gifford-Hill & Co. v. State, 442 S.W.2d 320 (Tex.1969), when materials are loaded upon trucks of a common carrier or other means of transportation, a "segregation in contemplation of transfer of title or possession" occurred and a sale takes place between the vendor and vendee under the provisions of the Limited Sales, Excise and Use Tax Act.

■ In determining whether a sale took place between Day & Zimmermann and the Federal Government, the pertinent inquiry to be made under the facts of the instant case and the definition of a sale set out above is whether there was a transfer of title or possession from Day & Zimmermann to the United States. As between Day & Zimmermann and its vendor, title to the materials and supplies purchased was to vest in Day & Zimmermann, under the "Terms and Conditions" attached to the purchase order used by Day & Zimmermann, as follows:

> Title to goods purchased hereunder shall pass to Buyer [Day & Zimmermann] on acceptance thereof. However, all such goods are subject to inspection by Buyer and the Contracting Officer [for the Federal Government] at the designated delivery point within a reasonable time after arrival and Buyer reserves the right to reject any goods which do not pass such inspection.

Title therefore appears to have vested in Day & Zimmermann after inspection and acceptance at the Lone Star Plant, although, as previously stated, the "sale" between Day & Zimmermann and its vendor took place when the goods were readied for shipment to the plant. With reference to the transfer of title from Day & Zimmermann to the Government, after the inspection and acceptance of the materials by Day & Zimmermann, they were labeled as property of the Federal Government. Additionally, the prime contract between Day & Zimmermann and the Government recites that

> [T]itle to all property purchased by the Contractor [Day & Zimmermann], for the cost of which the Contractor is entitled to be reimbursed as a direct item of cost under this contract, shall pass to and vest in the Government upon delivery of such property by the vendor.

Giving effect to such language in a contract is in consonance with Section 2.-401(a), Tex.Bus. & Comm.Code Ann., V.T.C.A., wherein it is stated that "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

■■ In view of the distinct, identifiable transactions between Day & Zimmermann and its vendor and Day & Zimmermann and the Federal Government, it is clear that the initial purchases by Day & Zimmermann were not taxable under the "Sale for Resale" exemption. Art. 20.-04(O). Additionally, the second sale between Day & Zimmermann and the Federal Government is also exempt under both articles 20.04(C) and (H) since they are sales the State is "prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this State"; and constitute "the receipts from the sale, . . . of any taxable items to,

.   .   .   [t]he United States, its unincorporated agencies and instrumentalities."

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.