# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00346-CV

---

**Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas/Raytheon E-Systems, Inc., Appellants**

**v.**

**Raytheon E-Systems, Inc./Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN101511, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

### O P I N I O N

In this case, we must decide whether Raytheon E-Systems, Inc. (ARaytheon@) is entitled to a refund of sales tax under the Asale for resale@ exemption of the tax code. Raytheon seeks the exemption for purchases of tangible overhead items charged as indirect costs to its contracts with the federal government. Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively, AComptroller@)[1] appeal, contending that the district court erred in concluding that

---

[1] We have substituted the current Attorney General as the appropriate party. *See* Tex. R. App. P. 7.2(a). The Comptroller and the Attorney General are statutory defendants in tax protest suits. *See* Tex. Tax Code Ann. ' 112.151(b) (West 2002). Because their interests do not diverge in this case, for convenience we will refer to them collectively as AComptroller.@

Raytheon was entitled to the refund. In a cross appeal, Raytheon contends that the district court erred in dismissing Raytheon=s claim for declaratory relief and attorney=s fees for lack of jurisdiction. We affirm the judgment of the district court in part, reversing in part that portion of the judgment ordering the Comptroller to issue warrants to Raytheon for a sales tax refund and remanding the cause for a factual determination of whether Raytheon has collected the sales tax from the federal government.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are not in dispute. Raytheon=s facilities in Garland and Greenville, Texas, provide intelligence systems, aircraft navigation systems, and other defense-related products to the federal government and the private sector. From June 1, 1989 through December 31, 1996 (Arefund period@), Raytheon paid sales tax to the Comptroller on its purchase of overhead items that it allocated as Aindirect costs@ to multiple federal contracts. Since 1975, federal contractors in Texas have been exempt from paying sales tax on purchases of items charged as direct costs to federal contracts. *See Day & Zimmermann, Inc. v. Calvert*, 519 S.W.2d 106, 110 (Tex. 1975) (holding that a federal contractor who transferred title of items to the government could claim a sale for resale exemption). Direct costs are charged only to one contract.

In 1998, in revised internal procedures memos, the Comptroller broadened the exemption to include purchases of overhead items charged as indirect costs, which are allocated among multiple contracts. Based on these revised procedures, the accounting firm of Ernst & Young, at Raytheon=s direction, prepared a request for a refund of sales taxes paid on tangible overhead items charged to

contracts as indirect costs during the refund period. In August 2000, the Comptroller changed its policy and denied Raytheon=s refund claims for indirect costs.

Raytheon filed two administrative appeals. In both, the administrative law judge upheld the denial of the refund claims. Raytheon then sued the Comptroller in district court for a refund. *See* Tex. Tax Code Ann. ' 112.151 (West 2002). Raytheon also sought declaratory relief and attorney=s fees under the Uniform Declaratory Judgments Act (AUDJA@), seeking a declaratory judgment that the Comptroller unlawfully denied its refund claims. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.004 (West 1997). The Comptroller filed pleas to the jurisdiction, requesting that the district court dismiss Raytheon=s request for declaratory relief because, by seeking relief that was redundant to the relief provided in the tax code, it was an improper pretext for obtaining attorney=s fees.

After conducting discovery, the parties agreed to stipulated facts. Raytheon then filed a motion for summary judgment, contending that no sales tax was due as a matter of law and that there were no factual issues concerning either the amount of the refund or Raytheon=s entitlement to attorney=s fees pursuant to the UDJA. The Comptroller also filed a motion for summary judgment, contending that the purchases of overhead items charged as indirect costs to federal contracts were not eligible for the sale for resale exemption.

The district court granted the Comptroller=s pleas to the jurisdiction and in turn dismissed Raytheon=s claims for declaratory relief and attorney=s fees. The court also granted Raytheon=s motion for summary judgment in part, finding that it was entitled to a sales tax refund but that a fact issue existed as to the amount of the refund. It denied the Comptroller=s motion for summary judgment. The parties then

3

entered into a supplemental stipulation of fact that the amount of the refund totaled $5,381,609. The district court, in light of the stipulation, determined in its final judgment that there were no factual issues to be tried and ordered the Comptroller to issue warrants for a tax refund.

The Comptroller contends in its appeal that the district court erred in its conclusion that Raytheon was entitled to the refund under the sale for resale exemption. Raytheon, in a cross appeal, contends that the district court erred in its conclusion that Raytheon was not entitled to declaratory relief and attorney=s fees. We will first address the Comptroller=s appeal.

### COMPTROLLER=S APPEAL

In four issues, the Comptroller contends that the trial court erred in granting Raytheon=s motion for summary judgment and denying its motion for summary judgment. Specifically, the Comptroller argues that Raytheon=s purchases of tangible overhead items charged as indirect costs to multiple federal contracts do not qualify for the sale for resale exemption because (i) Raytheon purchases the items for its own consumption and use; (ii) the sale for resale exemption does not encompass overhead costs charged to multiple contracts; and (iii) there is insufficient evidence of transfer of title to the federal government and, nevertheless, that mere transfer of title is not a sufficient basis for a sale for resale exemption.

The standards for review of a traditional summary judgment are well established: the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant=s favor. *See Cathey v. Booth*, 900 S.W.2d

4

339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  A

plaintiff must establish all elements of the cause of action as a matter of law.  Tex. R. Civ. P. 166a(c); *City*

*of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).  A defendant, however,

must disprove at least one essential element of each of the plaintiff=s theories of recovery or conclusively

establish each element of an affirmative defense to prevail. *See Friendswood Dev. Co. v. McDade + Co.*,

926 S.W.2d 280, 282 (Tex. 1996).  We review the trial court=s decision to grant summary judgment *de*

*novo.  Natividad v. Alexsis, Inc*., 875 S.W.2d 695, 699 (Tex. 1994).

Generally, a party cannot appeal the denial of a motion for summary judgment because it is

an interlocutory order and thus not appealable.  *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623,

625 (Tex. 1996).  However, when both parties move for summary judgment and the district court grants

one motion and denies the other, the unsuccessful party may appeal both the prevailing party=s motion and

the denial of its own.  *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996).  We will review the

summary judgment evidence presented by both sides, determine all questions presented, and render such

judgment as the trial court should have rendered.  *Commissioners Court v. Agan*, 940 S.W.2d 77, 81

(Tex. 1997).  We are required to consider all summary judgment grounds the trial court ruled on and the

movant preserved for appellate review that are necessary for final disposition of the appeal.  *Cincinnati*

*Life Ins. Co.*, 927 S.W.2d at 625-26.

To put Raytheon=s claim for the sale for resale exemption in context, we will first examine

Raytheon=s contracts with the government, as well as the relevant federal regulations.  The Federal

Acquisition Regulations (AFARs@) set forth standards for government contracts.  *See* 48 C.F.R. ch. 1, pts.

1-99 (2001).[2]  Raytheon=s contracts included both Afixed-price,@ in which the government pays a set price for the contract, *see* 48 C.F.R. ' 16.201, and Acost-type,@ in which the government pays certain costs in performance of the contract, plus an additional fee, *see id.* ' 16.301.  The government paid the fixed-price contracts in Aprogress payments@ over the course of Raytheon=s performance of the contracts.

Both the fixed-price and cost-type contracts contain title-vesting clauses upon which Raytheon relies for its argument that it sells its overhead items to the federal government.  FAR 52.232-16(d), incorporated in fixed-price contracts entered into after April 1984,[3] states as follows:

PROGRESS PAYMENTS

. . . .

(d) *Title*.
(1)*Title to the property described in this paragraph (d) shall vest in the Government*.  Vestiture shall be immediately upon the date of this contract, for property acquired or produced before that date.  Otherwise, vestiture shall occur

---

[2] The Federal Acquisition Regulations (AFARs@) have been amended since the commencement of this action, but the amendments did not change the substance of the applicable provisions.  For convenience, we will refer to the current FARs.

[3] Defense contracts entered into before April 1984, which contained similar title-passing clauses, were governed by the Defense Acquisition Regulations (ADAR@).  The FAR system in chapter 48 of the Code of Federal Regulations replaced the DAR.

when the property is or should have been allocable or properly chargeable to this contract.

(2) AProperty,@ as used in this clause, includes all of the below-described items acquired or produced by the Contractor that are or should be allocable or properly chargeable to this contract under sound and generally accepted accounting principles and practices.

   (i)   Parts, materials, inventories, and work in process;

   (ii)  Special tooling and special test equipment to which the Government is to acquire title under any other clause of this contract;

   (iii) Nondurable (i.e., noncapital) tools, jigs, dies, fixtures, molds, patterns, taps, gauges, test equipment, and other similar manufacturing aids, title to which would not be obtained as special tooling under paragraph (d)(2)(ii) of this clause; and

   (iv)  Drawings and technical data, to the extent the Contractor or subcontractors are required to deliver them to the Government by other clauses of this contract.

48 C.F.R. ' 52.232-16(d) (emphasis added). FAR 52.245-5(c), incorporated in cost-type contracts entered into after April 1984, states as follows:

(c) *Title*.
   (1) The Government shall retain title to all Government-furnished property.
   (2) Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the vendor=s delivery of such property.
   (3) *Title to all other property, the cost of which is reimbursable to the Contractor, shall pass to and vest in the Government upon*C
      (i) *Issuance* of the property for use in contract performance;

      (ii) *Commencement of processing* of the property or use in contract performance; or

7

(iii) *Reimbursement* of the cost of the property by the Government, whichever occurs first.

(4) All Government-furnished property and all property acquired by the Contractor, title to which vests in the Government under this paragraph (collectively referred to as AGovernment property@), are subject to the provisions of this clause. Title to Government property shall not be affected by its incorporation into or attachment to any property not owned by the Government, nor shall Government property become a fixture or lose its identity as personal property by being attached to any real property.

48 C.F.R. ' 52.245-5(c) (emphasis added).

Raytheon purchased many different items of tangible personal property for use in performing the contracts. Some of the items, called Adirect costs,@ were tied to only one Acost objective,@ which is a contract. *Id.* ' 31.202. Other items, such as overhead costs of office supplies, were charged across multiple government and private contracts. These were Aindirect costs,@ Anot directly identified with a single, final cost objective, but identified with two or more final cost objectives or an intermediate cost objective.@ *Id.* ' 31.203(a). At dispute in this appeal is the imposition of sales tax on the purchase of tangible overhead items charged as indirect costs to government contracts.

Whether Raytheon is entitled to the sale for resale exemption is a question of state law. *See* 48 C.F.R. ' 29.303 (sales tax exemption for a contractor=s purchase charged to a contract Amay not rest on the Government=s immunity from direct taxation by States and localities. It may rest instead on

provisions of the particular State or local law involved, or, in some cases, the transaction may not in fact be expressly exempt from the tax.@).[4]  Accordingly, we will next turn to the applicable state tax provisions.

Tax exemptions are strictly construed against the taxpayer.  *See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.CAustin 2000, pet. denied).  But, Athe rule of strict construction cannot be used as an excuse to stray from reasonableness.@ *Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 161 (Tex. App.CAustin 1996, writ denied).  The claimant has the burden of clearly showing that it is entitled to the exemption.  *North Alamo Water Supply*, 804 S.W.2d at 899.

Raytheon is seeking a sales tax refund under the Asale for resale@provision of the tax code: AThe sale for resale of a taxable item is exempt from the taxes imposed by this chapter.@ Tex. Tax Code Ann. ' 151.302(a) (West 2002).  The purpose of the sale for resale exemption is to prevent double taxation.  *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.CAustin 1998, pet. denied).  A Asale for resale@ is a sale of

> tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it . . . in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service.

---

[4] The Comptroller argues that, because of this regulation, determination of whether the sale for resale exemption applies is Awholly a matter of Texas law,@ although federal law controls the terms of Raytheon=s contracts with the government.

*Id.* ' 151.006(1) (West 2002). A Asale@ includes a Atransfer of title or possession of tangible personal property@ that is Adone or performed for consideration.@ *Id.* ' 151.005(1) (West 2002). Additionally, a taxable item sold to the federal government is exempt from sales tax. *Id.* ' 151.309(1) (West 2002).

Raytheon argues that passage of title to indirect costs to the federal government under the title-vesting provisions of the contracts relieves it of tax liability. The Comptroller disagrees for several reasons. The Comptroller first contends that there is insufficient evidence of a transfer of title to the government on the grounds that the affidavit of Carol Covey, who has worked for the federal government on contracting matters since 1973, Adoes not unequivocally and directly say that the FARs pass title.@ We disagree. Covey, who was designated to state the official position of the Department of Defense, construed the relevant FARs. She averred that under FAR 52.232-16(d), concerning fixed-price contracts, title to property acquired after the contract

> vests when the property is or should have been allocable or properly chargeable to the defense contract. Upon completion of all obligations under the contract, the Government is deemed to have received all property in which it was vested title. This property was (i) delivered to and accepted by the Government under the defense contract; (ii) incorporated in items delivered to and accepted by the Government under the defense contract; or (iii) consumed in the performance of the defense contract. Indirectly charged property is normally considered to be consumed during the year in which it was charged to the contract.

She further attested that property under cost-type contracts encompasses indirect costs Aincluded in an overhead rate applicable to the performance of the contract.@ Title to items charged as indirect costs to cost-type contracts, she went on to state,

10

passes to the government at the earliest of the following three events: the property is (i) issued by the contractor for use under the contract; or (ii) processed or used by the contractor in performing the contract; or (iii) reimbursed by the Government as an item of cost to the contractor. Indirect property is deemed to be issued, processed, or used during the year in which it is properly allocated or charged to the contract. The Government is vested with title to all reimbursable property under FAR 52.245-5(c).

The Comptroller urges that because Raytheon controls and uses the overhead items, the federal government has abandoned title. *See Railroad Comm=n v. Waste Mgmt. of Texas, Inc.*, 880 S.W.2d 835, 843 (Tex. App.CAustin 1994, no writ) (abandonment of personal property includes Aan intent by the owner to leave the property free to be appropriated by any other person@). There is no indication that the government abandoned title: Raytheon was obligated by contract to consume the overhead items in the course of performing the government contracts, and the stipulation of facts stated that Raytheon did consume the overhead items in the course of performing the contracts.

The applicable FARs and Covey=s affidavit make clear that the government obtains title to overhead items charged as indirect costs to government contracts at the time the costs are allocated to the contracts. For fixed-price contracts with progress payments, A[t]itle to the property described in this paragraph (d) shall vest in the Government.@ 48 C.F.R. 52.232-16(d). In cost-type contracts, title in property acquired by the contractor vests when the property is issued for contract performance, processed for contract performance, or reimbursed by the government, whichever comes first. 48 C.F.R. 52.245-5(c). Covey attests that for both types of contracts the government acquires title to property charged as indirect costs. Moreover, under the business and commerce code, Atitle to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.@ Tex. Bus. & Com.

11

Code Ann. ' 2.401(a) (West 1994). Viewing together the governing federal regulations, the Covey affidavit, the stipulation that Raytheon consumed the items in the course of performing the contracts, and the explicit contractual agreements, we conclude that there is clear evidence that title to overhead items charged as indirect costs did pass to the federal government.

The Comptroller further argues that even if we conclude that title does pass to the government, the sale for resale exemption turns on control and use, not mere title. It contends that Raytheon=s consumption and use of the overhead items defeats its tax exemption claim. Although Raytheon did retain control of the overhead items and consume them for its own use, it did so in the course of performing the contracts. An agreed stipulation of fact stated that all of the overhead items charged to the federal contracts Awere consumed by Raytheon *in performing its Government Contracts and Government Subcontracts* and not incorporated into any final product delivered to the Federal Government.@ (Emphasis added.) A sale includes a transfer of Atitle or possession.@ Tex. Tax Code Ann. ' 151.005(1). The tax code does not require a sale to hinge on control and use. Therefore, transfer of title alone, which Raytheon has established, does not defeat Raytheon=s claim for a sale for resale exemption.

The Comptroller next contends that Raytheon did not sell or transfer the overhead items to the government in the Anormal course of business.@ Tex. Tax Code Ann. ' 151.006(1). It urges that Raytheon=s normal course of business is Aselling machines of war,@ not selling pencils and employee awards to the government. This argument is without merit. Raytheon=s normal course of business in this context is performing government contracts. It allocated overhead items that it purchased to perform government

12

contracts. We thus conclude that it sold the items to the federal government in the normal course of business.

Citing *Sharp v. Clearview Cable TV, Inc.*, the Comptroller further argues that the sale for resale exemption applies only to Asale of discrete items,@ and thus that Raytheon cannot claim the exemption for allocation of portions of items to federal contracts. Although this Court agreed with the Comptroller in *Clearview Cable* that cable equipment composed of five items but integrated as one unit must still be viewed as five items for tax purposes, 960 S.W.2d at 427, our opinion simply did not address the issue of ownership of portions of items. We find persuasive Raytheon=s argument in response that the Comptroller has allowed exemptions for an undivided interest in property in other instances.[5]

Furthermore, the federal regulations allow title to pass for allocated portions of indirect costs. The FAR addressing recordkeeping of government property states that

> [a]ll Government material furnished to the contractor, as well as other material to which title has passed to the Government by reason of *allocation* from contractor-owned stores or purchase by the contractor for direct charge to a Government contract or otherwise, shall be recorded in accordance with the contractor=s property control system and the requirements of this section.

48 C.F.R. ' 45.505-3(a) (emphasis added).

---

[5] For example, the Comptroller allowed a partial use tax exemption for a joint venture that had tax-exempt partners. *See* Texas Comptroller of Public Accounts, STAR System No. 7801T0099C06, *available at* http://aixtcp.cpa.state.tx.us/star/openrec1.html.

The Comptroller then contends that because the sale for resale exemption applies only to the sale of an item Ain the form or condition in which it is acquired,@ Tex. Tax Code Ann. ' 151.006(1), Raytheon does not qualify because sale of a *part* of an item is not in the same Aform or condition@ in which it is acquired. The Comptroller, however, cites no support for this proposition, and we find none. Thus, we reject the Comptroller=s argument that Raytheon cannot claim the sale for resale exemption for allocation of portions of items to federal contracts.

The Comptroller especially urges that the only Texas case applying the sale for resale exemption to a federal contractor, *Day & Zimmermann, Inc. v. Calvert*, does not permit a tax exemption for indirect costs. 519 S.W.2d at 110. While we agree with the Comptroller that Day & Zimmermann=s contract with the federal government differed from Raytheon=s contracts, the distinctions do not undercut the application of the *Day & Zimmermann* analysis to this case.

Day & Zimmermann was a federal contractor that operated a government-owned ammunition plant. It purchased items in its own name. *Id.* at 109. Then, when the items arrived at the plant, they were stamped with government property labels. The government then reimbursed Day & Zimmermann for the items as direct costs. The court held that Day & Zimmermann qualified for the sale for resale exemption because a transfer of title took place from Day & Zimmermann to the federal government, based on title-vesting clauses in the contracts. *Id.* at 110. The original sale from the vendor to Day & Zimmermann was not taxable because title vested in the federal government. The sale from Day & Zimmermann to the federal government was not taxable because of the exemption on taxes for sales to the federal government.

14

The Comptroller argues that the *Day & Zimmermann* analysis should not apply here because Day & Zimmermann Astepped into the shoes@ of the federal government in operating the ammunition plant, whereas Raytheon performs government contracts at its own plants. But in both cases, the contractors consumed the items in the course of performing contracts for the government. The Comptroller further contends that the sale for resale exemption to federal contractors should not extend to indirect costs. Also in both cases, the contracts contained title-vesting clauses. As we have discussed, title vests in both direct and indirect costs. Additionally, we find persuasive the testimony of Richard Wall, an Ernst & Young accountant with extensive experience in accounting issues of government contracts. In his affidavit, Wall averred that it seems illogical to allow Day & Zimmermann to claim an exemption for office supplies and not allow Raytheon to do so, when ninety-two percent of its business in the plants is with the federal government. We reject the Comptroller=s argument that the *Day & Zimmermann* analysis does not apply to this case.

The Comptroller also attempts to employ holdings in other Texas sale for resale exemption cases to support its proposition that Raytheon does not qualify for the exemption here. None of the cases that the Comptroller cites, however, are as closely analogous as *Day & Zimmermann*. None address, for example, the issue of transfer of title to personal property. *See Clearview Cable*, 960 S.W.2d at 427 (applying exemption to a service of providing equipment to customers without a complete divestiture of rights in property, because customers controlled the property); *East Tex. Oxygen Co. v. State*, 681 S.W.2d 741, 745 (Tex. App.CAustin 1984, no writ) (declining to apply exemption to lease of returnable containers); *Davis-Kemp Tool Co., Inc. v. Bullock*, 584 S.W.2d 579, 580 (Tex. Civ. App.CBeaumont

15

1979, writ ref=d n.r.e.) (declining to apply exemption to lease of equipment because customers never controlled equipment). Furthermore, we cannot find any holdings in these cases that prevent application of the sale for resale exemption to Raytheon=s purchases of overhead items charged as indirect costs.

We also find persuasive the trend in other jurisdictions to apply the sale for resale exemption in similar contexts. These cases involved defense contracts with the federal government that contained the same title-vesting language. The sale for resale exemptions were similar, except that the Aform or condition@ requirement is unique to Texas. An early case holding that overhead items charged as indirect costs to federal contracts qualify for a tax exemption was *Aerospace Corp. v. State Bd. of Equalization*, 267 Cal. Rptr. 685 (Cal. Ct. App. 1990). The court held that Aerospace was entitled to the resale exemption because title vested in the federal government under the contracts. *Id.* at 692. Another California court of appeals recently reiterated this holding as applied to ad valorem taxes. *See Hughes Aircraft Co. v. County of Orange*, 117 Cal. Rptr. 2d 601, 614 (Cal. Ct. App. 2002). The Missouri Supreme Court in *McDonnell Douglas Corp. v. Director of Revenue* came to the same conclusion concerning use taxes. *See* 945 S.W.2d 437, 442 (Mo. 1997) (en banc). An Arizona court of appeals, after conducting an extensive analysis of the title-vesting provisions, concluded that Aafter examining both types of contracts, we conclude that because title passed, the items were sold and therefore were not subject to the use tax.@ *Motorola, Inc. v. Arizona Dep=t of Revenue*, 993 P.2d 1101, 1105 (Ariz. Ct. App. 1999).

The Comptroller argues that the above cases Aare of limited value because each turned on the statute and precedent of that state.@ Although arguing that this case is solely a matter of Texas state law, the Comptroller further contends that the controlling *federal* law in Texas is that the title-vesting clauses

16

create no more than a security interest, not a full passage of title. *See United States v. Hartec Enters., Inc.*, 967 F.2d 130 (5th Cir. 1992). The issue in *Hartec* was whether the defendants could be convicted of theft of government property. Applying the rule of lenity, the court determined that courts had inconsistently interpreted title-vesting clauses in federal contracts. It concluded the defendants could not be convicted of theft when they did not have A fair notice of [the] prohibited conduct.@ *Id.* at 133. The court found the reasoning of another federal court to be A compelling in this *criminal* case.@ *Id.* (citing *Marine Midland Bank v. United States*, 687 F.2d 395 (Ct. Cl. 1982)) (emphasis added). The *Marine Midland* court held that title-vesting clauses should not be literally construed and that the clauses create no more than a security interest. *See* 687 F.2d at 403-04. The controlling federal law in Texas concerning *civil* cases is *United States v. Digital Products Corp.*, which determined that the government held title to goods being manufactured at the time of a contractual breach. 624 F.2d 690, 695 (5th Cir. 1980). Accordingly, we reject the Comptroller=s argument that the *Hartec* holding applies in this case.

Having addressed the Comptroller=s arguments, we conclude that Raytheon has clearly shown that it is entitled to a sales tax refund under the sale for resale exemption. *North Alamo Water Supply*, 804 S.W.2d at 899. This exemption applies to purchases of tangible overhead items allocated as indirect costs to contracts with the federal government. *See* Tex. Tax Code Ann. ' 151.302(a); *Day & Zimmermann*, 519 S.W.2d at 110. The original sale from a vendor to Raytheon is not taxable because title vested in the federal government. *See* Tex. Tax Code Ann. '' 151.006(1), .302(a). The sale from Raytheon to the federal government is not taxable because of the exemption on taxes for sales to the federal government. *Id*. ' 151.309(1).

17

Under the terms of the contracts, and according to the affidavit of Carol Covey, title to the overhead items vests in the government. Passage of title qualifies as a sale under Texas law. *See* Tex. Tax Code Ann. ' 151.005(1). Moreover, the parties stipulated that Raytheon consumed all of the items charged to the contracts in the course of performing those contracts. We agree with the Missouri Supreme Court in *McDonnell Douglas* that there is Ano compulsion at this time to ignore the plain meaning of the title vesting provisions included in the federal contracts at issue.@ 945 S.W.2d at 441.

Additionally, having determined that the overhead items qualify for the sale for resale exemption, we reject the Comptroller=s argument that Raytheon owes a use tax. *See id.* '' 151.101-.107, .302(a) (the sale for resale exemption applies to all taxes imposed in the chapter, which includes the use tax). The parties stipulated that Raytheon used the items in the course of performing government contracts. Further, we have determined that title to the items passed to the federal government under the terms of the contracts. Following the *Day & Zimmermann* precedent, Raytheon does not owe a use tax. *See Day & Zimmermann*, 519 S.W.2d at 110-11 (holding that the sale for resale exemption, which also exempts use tax, applies when title passes to the federal government). Accordingly, we overrule all of the Comptroller=s issues and affirm the judgment of the district court.

The Comptroller argues that Athe final barrier to any recovery by Raytheon@ is that Raytheon will not be entitled to any tax refund until it repays the federal government for indirect payment of taxes. *See* Tex. Tax Code Ann. ' 111.104(f) (West 2002) (no tax refund Ato a person who has collected the taxes from another person unless that person has refunded all the taxes and interest@). Raytheon disputes that it billed taxes to the federal government. The issue is unclear in the record. We conclude that

although Raytheon is entitled to a refund of sales taxes under the sale for resale exemption, double recovery is not appropriate. Therefore, we remand to the district court the factual determination of whether Raytheon has collected the sales tax from the federal government.

## RAYTHEON=S APPEAL

Raytheon contends that the district court erred in granting the Comptroller=s pleas to the jurisdiction and dismissing Raytheon=s claim for declaratory judgment and attorney=s fees for lack of jurisdiction. Raytheon sued the Comptroller in district court for a refund of sales taxes. *See* Tex. Tax Code Ann. ' 112.151. It also sought declaratory relief and attorney=s fees under the UDJA, seeking a declaratory judgment that the Comptroller unlawfully denied its refund claims. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.004 (West 1997).

A plea to the jurisdiction contests the district court=s subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see also Texas Dep=t of Transp. v. Jones,* 8 S.W.3d 636, 637 (Tex. 1999). Because subject matter jurisdiction poses a question of law, we review rulings on a plea to the jurisdiction *de novo. See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998).

The plaintiff bears the burden of pleading facts that show the district court has subject matter jurisdiction; therefore, we examine a plaintiff=s good faith factual allegations to determine whether the district court has jurisdiction. *See Texas Dep=t of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) (citing *Texas Natural Res. Conservation Comm=n v. White*, 46 S.W.3d 864, 868 (Tex. 2001))

19

(to determine whether a plaintiff has affirmatively demonstrated the court=s jurisdiction to hear the cause, courts should Aconsider the facts alleged by the plaintiff, and to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties@); *Brannon v. Pacific Employers Ins. Co.*, 224 S.W.2d 466, 469 (Tex. 1949). The nature of the issues raised in the plea determines the scope of the court=s focus; this means we may look beyond the pleadings and are required to do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. Unless the defendant pleads and proves that the plaintiff=s allegations were fraudulently made to confer jurisdiction or the face of the petition affirmatively demonstrates a lack of jurisdiction, the district court must liberally construe the plaintiff=s allegations in favor of jurisdiction. *See Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996); *Peek v. Equipment Serv. Co. of San Antonio*, 779 S.W.2d 802, 804 (Tex. 1989).

The Comptroller=s pleas to the jurisdiction requested that the district court dismiss Raytheon=s request for declaratory relief and attorney=s fees because the relief that Raytheon sought under the UDJA was redundant to the relief it sought in its suit for a tax refund under section 112.151 of the tax code, with the exception of Raytheon=s request for attorney=s fees. Attorney=s fees are recoverable only when provided for by statute or by the parties= agreement. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). A party proceeding under the UDJA may recover its attorney=s fees. Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (West 1997). The grant or denial of attorney=s fees under the UDJA is within the district court=s discretion, and its order will not be reversed on appeal absent a clear showing that the court abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985); *Del Valle Indep. Sch. Dist. v. Lopez*, 863 S.W.2d 507, 513 (Tex. App.CAustin 1993, writ

20

denied). The legal principle encompassed in the term Aabuse of discretion@ concerns a legal error committed by the district court in its award of attorney=s fees that injured or prejudiced appellants. *Lopez*, 863 S.W.2d at 513. We review a question of legal error *de novo. State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996); *Mayberry v. Texas Dep=t of Agric.*, 948 S.W.2d 312, 314 (Tex. App.CAustin 1997, pet. denied).

It is an abuse of discretion to award attorney=s fees under the UDJA when the relief sought is no greater than relief that otherwise exists by agreement or statute. *See Texas State Bd. of Plumbing Exam=rs v. Associated Plumbing-Heating-Cooling Contractors of Texas, Inc.*, 31 S.W.3d 750, 753 (Tex. App.CAustin 2000, pet. dism=d by agr.); *University of Texas v. Ables*, 914 S.W.2d 712, 717 (Tex. App.CAustin 1996, no writ). To establish jurisdiction under the UDJA, a party must plead the existence of an Aunderlying controversy@ within the scope of section 37.004 of the civil practice and remedies code. *See Kadish v. Pennington Assocs., L.P.*, 948 S.W.2d 301, 304 (Tex. App.CHouston [1st Dist.] 1995, no writ). When a statute provides an avenue for attacking an agency order, a declaratory judgment action will not lie to provide redundant remedies. *Beacon Nat=l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 (Tex. App.CAustin 2002, no pet.) (citing *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.CAustin 1998, pet. denied)). AThere is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy.@ *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.CHouston [1st Dist.] 2001, pet. denied). It is an abuse of discretion, therefore, to award attorney=s fees under the UDJA when the statute is

21

relied upon solely as a vehicle to recover attorney=s fees. *Texas State Bd. of Plumbing Exam=rs*, 31 S.W.3d at 753.

Raytheon urges that under this Court=s decision in *Rylander v. Bandag Licensing Corp.*, it Ahad the right to seek declaratory relief in addition to a judgment for the refund it is due.@ 18 S.W.3d 296 (Tex. App.C Austin 2000, pet. denied). Raytheon further argues that the fact that it sought a refund under the tax code did not bar the district court from entering a declaratory judgment, because it established an underlying controversy by requesting interpretation of provisions of the tax code and title-passing clauses in Raytheon=s contracts with the federal government. We disagree. Unlike Raytheon, Bandag requested a statutory interpretation that went beyond its request for a tax refund. *See id.* at 303-04 (statute prohibiting issuance of declaratory judgment was impermissible restriction on open courts provision of Texas Constitution).

Raytheon sought a declaratory judgment that the Comptroller=s denial of its refund claims was unlawful and that the claimed items were exempt from sales tax. Incorporated in this request for declaratory judgment was a suit for a refund, relief specifically provided for under the tax code. *See* Tex. Tax Code Ann. ' 112.151. Raytheon=s request for statutory interpretation was merely another mechanism for asking the court to order the Comptroller to issue a sales tax refund. Thus, Raytheon=s request for declaratory relief was redundant to its suit for a refund. Declaratory relief is improper if a statute provides the same remedy. *See Beacon Nat=l Ins. Co.*, 86 S.W.3d at 267. All that was left, then, of Raytheon=s request for declaratory relief was a request for attorney=s fees. A UDJA claim brought merely to receive attorney=s fees will not lie. *Texas State Bd. of Plumbing Exam=rs*, 31 S.W.3d at 753. Accordingly, we

22

overrule Raytheon=s issue and affirm the order of the district court dismissing its request for declaratory relief and attorney=s fees.

## CONCLUSION

We hold that title passed to the federal government for Raytheon=s tangible overhead items charged as indirect costs to its contracts with the government.  Accordingly, we conclude that Raytheon is entitled to a sales tax refund under the sale for resale exemption for purchases of tangible overhead items charged as indirect costs to defense contracts with the federal government.  We further conclude that Raytheon impermissibly sought declaratory relief that was redundant to the relief provided for in the tax code.  Therefore, Raytheon is not entitled to any declaratory relief or attorney=s fees.  We affirm the judgment of the district court in part, reversing in part that portion of the judgment ordering the Comptroller to issue warrants to Raytheon for a sales tax refund and remanding the cause for further proceedings in accordance with this opinion for the factual determination of whether Raytheon has collected the sales tax from the federal government.

Jan P. Patterson, Justice

Before Justices Yeakel, Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

23

Filed:   January 30, 2003