

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-22-00005-CV

_____

THE GEO GROUP, INC. AND GEO CORRECTIONS AND DETENTION, LLC,
APPELLANTS

V.

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS
OF THE STATE OF TEXAS, AND KEN PAXTON, ATTORNEY GENERAL
OF THE STATE OF TEXAS, APPELLEES

On Appeal from the 201st District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-19-002600, Honorable Lora J. Livingston, Presiding

January 23, 2023

OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellants, the GEO Group, Inc., and GEO Corrections and Detention, LLC (collectively, "GEO"), appeal from the trial court's judgment that they are not entitled to a sales-tax refund. We affirm the judgment.

---

[1] Pursuant to the Supreme Court's docket equalization efforts, this case was transferred to this Court from the Third Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

**BACKGROUND**

GEO owns and operates correctional and detention facilities throughout the United States. The services provided by GEO include housing, feeding, monitoring, and transporting detainees held in government custody. GEO operated such facilities in Texas under contracts with both the State of Texas and the United States during the tax period January 1, 2011, through December 31, 2014. In that period, GEO purchased items such as electricity, computers, furniture, and food it needed to operate its facilities. GEO was later audited by the Comptroller to determine sales and use tax compliance for the relevant period and was assessed a deficiency. GEO requested redetermination, refunds, and audit reductions based on its claim that its purchases were exempt from taxation. After the Comptroller rejected GEO's claims, GEO brought this taxpayer suit for refund.[2]

The parties stipulated that if the trial court found that GEO was entitled to make tax-exempt purchases during the relevant tax period under section 151.309 of the Texas Tax Code, then GEO would be entitled to a refund of $3,937,103.71, plus interest. Following a bench trial, the trial court entered judgment that GEO was not entitled to the claimed refunds. GEO requested findings of fact and conclusions of law, which the trial court issued. GEO filed this appeal.

---

[2] GEO has paid all additional tax found due.

ANALYSIS

Standard of Review

We review the trial court's conclusions of law de novo and its findings of fact for sufficiency of the evidence. *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). When construing administrative rules and statutes, our primary objective is to give effect to the intent of the issuing agency and Legislature. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (addressing statutory construction); *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (addressing rule construction).

Applicable Law

Texas law requires that every sale of property be taxed unless an exemption applies. *See* TEX. CONST. art. VIII, § 2; TEX. TAX CODE ANN. § 151.051(a) (imposing sales tax on all taxable items). One exception to the general rule imposing a sales tax is found in section 151.309 of the Tax Code, which creates an exemption for "taxable item[s] sold, leased, or rented to, or stored, used, or consumed by" the federal government or the State of Texas. TEX. TAX CODE ANN. § 151.309.

In connection with section 151.309, the Comptroller promulgated tax Rule 3.322. *See* 34 TEX. ADMIN. CODE § 3.322 (Exempt Organizations). Under subsection (c) of Rule 3.322, entities and organizations exempt from payment of sales tax include "[t]he United States, its unincorporated agencies and instrumentalities" and "the State of Texas, its unincorporated agencies and instrumentalities." *Id.* "Valid rules and regulations promulgated by an administrative agency acting within its statutory authority have the force and effect of legislation." *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d

3

307, 310 (Tex. 1976). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999) (per curiam).

Tax exemptions are strictly construed against the taxpayer. *See N. Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979) (burden of proof is on claimant to clearly show that it comes within statutory exemption); *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 585 S.W.3d 530, 533–34 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (claimant seeking tax exemption "bears a heavy burden of proof to clearly show that the claimant falls within the statutory exception"), *aff'd*, 624 S.W.3d 535 (Tex. 2021).

Tax Exemption Eligibility

In its findings of fact numbered 19, 20, and 21, the trial court determined that GEO is not an agency or instrumentality of the United States and is not an organization described in Rule 3.322(c) and that the items in question were not sold to an instrumentality of the United States or to an organization described in Rule 3.322(c).

GEO argues that its purchases of items used or consumed in performing a governmental function are eligible for the sales tax exemption because the detention and rehabilitation services GEO provided to detainees is a quintessential governmental function, making GEO an "instrumentality" of the government under Rule 3.322. GEO further asserts that the trial court erred by making its findings of fact and conclusions of

4

law based only upon its consideration of whether GEO was an agent of the government clients, and not considering whether it was an instrumentality of the government clients.

The Administrative Code does not define "instrumentality." Unless words used in a statute have a specialized meaning, we give them their ordinary meaning. TEX. GOV'T CODE ANN. § 312.002(a). Black's Law Dictionary defines "instrumentality" as "1. A thing used to achieve an end or purpose. 2. A means or agency through which a function of another entity is accomplished, such as a branch of a governing body." *Instrumentality*, BLACK'S LAW DICTIONARY 952 (11th ed. 2019).

GEO observes that the Attorney General of the United States and county commissioners' courts in Texas procure services for individuals held in custody or confinement and that government agencies publish extensive standards under which GEO's functions must be performed. It concludes that, because the government clients exercised significant control over its functions, GEO was "a thing used" by the government clients "to achieve [the] end or purpose" of housing and rehabilitating government detainees, i.e., it was a government instrumentality.

This first dictionary definition of "instrumentality" promoted by GEO is too broad to be helpful. Were we to apply it, such that instrumentality status required only being "a thing used to achieve an end or purpose," almost any independent contractor that performed work for the government could be considered an instrumentality of the government. When an undefined statutory term has multiple common meanings, we "apply the definition most consistent with the context of the statutory scheme." *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016). As the cases discussed herein

5

illustrate, the second definition, relating an instrumentality to "a branch of a governing body," is more in harmony with cases addressing tax exemption claims.

GEO relies on *Human Rights Defense Center. v. Correct Care Solutions*, 263 A.3d 1260, 1264–67 (Vt. 2021), in support of its argument. We find *Correct Care* distinguishable and not persuasive.[3] In *Correct Care*, the Supreme Court of Vermont determined that a private entity was subject to Vermont's Public Records Act as an "instrumentality" of the state because the entity had contracted with the state "to discharge the entirety of a fundamental and uniquely governmental obligation owed to its citizens." *Id.* at 1267. GEO argues that, because the housing and rehabilitation of persons detained under federal or state law is inherently a governmental function, its performance of those operations make it an instrumentality of its government clients.

*Correct Care* is not a Texas tax case, but rather a Vermont public records case. Vermont's Public Records Act requires its provisions to be "liberally construed" to allow access to governmental records and thus casts a wide net over entities that properly come under its provisions. *See id.* at 1264. In contrast, under Texas law, tax exemptions are strictly construed against the taxpayer. *N. Alamo Water Supply Corp.*, 804 S.W.2d at 899; *see also Bullock*, 584 S.W.2d at 272 n.5 (acknowledging that taxation is the rule and exemption the exception). Thus, Texas law favors non-instrumentality status.

Further, we note that an entity may be a governmental unit in one context but not in another. *See, e.g., Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017) ("[W]hether an entity is entitled to an interlocutory appeal [as a governmental unit]

---

[3] GEO cites additional cases which, like *Correct Care*, are out-of-state, non-tax cases.

6

and whether an entity has sovereign immunity are separate questions with separate analytical frameworks."). Similarly, "instrumentality" is susceptible of different meanings in different contexts. *See Guardian Indus. Corp. v. Comm'r*, 143 T.C. 1, 13–14 (2014) (discussing cases where "agency" and "instrumentality" have different definitions in various circumstances); *see also Fasano v. Fed. Res. Bank of New York*, 457 F.3d 274, 282 (3d Cir. 2006) ("Instrumentality jurisprudence has never been characterized by particular clarity."). We must determine whether GEO is an instrumentality given the context in which it operates.

The Comptroller contends that GEO is not an instrumentality of its government clients under precedent of the United States Supreme Court and the Texas Supreme Court. GEO argues that the relevant test for whether a private federal contractor is an instrumentality of the government entitled to make purchases exempt from state taxation was set forth by the U.S. Supreme Court in *United States v. New Mexico*, 455 U.S. 720 (1982). In *New Mexico*, the United States brought suit seeking a declaratory judgment that federal contractors who operated government-owned nuclear research laboratories for the Department of Energy were exempt from state taxation on the goods they purchased in the course of operating their laboratories. *Id.* at 728. The New Mexico state tax law at issue provided an exemption for the "receipts of the United States or any agency or instrumentality thereof" and the "use of property by the United States or any agency or instrumentality thereof." *Id.* The Supreme Court rejected the federal government's claim that the contractors were entitled to tax-exempt status, holding that "tax immunity is appropriate only in one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two

7

cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *Id.* at 735. The court explained that "to resist the State's taxing power, a private taxpayer must actually 'stand in the Government's shoes.'" *Id.* at 736 (*quoting City of Detroit v. Murray Corp. of Am.*, 355 U.S. 489, 503, 78 S. Ct. 458, 462, 2 L. Ed. 2d 441 (1958)).

The question in *New Mexico* was the extent to which a state may impose taxes on contractors that do business with the federal government; the Supreme Court considered both agency principles and the nature of federal instrumentalities before concluding that the taxes at issue were not imposed on the "receipts of the United States or any agency *or instrumentality* thereof." *New Mexico*, 455 U.S. at 728 (emphasis added). Under the test applied in *New Mexico*, an ordinary contractor with the federal government is not entitled to tax immunity unless it is "so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *Id.* at 735. The entity, whether agency or instrumentality, must do more than help the government achieve some end or discharge some obligation.

The Comptroller further contends that GEO is not an instrumentality of the government under the Texas Supreme Court's decision in *Day & Zimmermann, Inc. v. Calvert*, 519 S.W.2d 106, 110 (Tex. 1975). Day & Zimmermann, the operating contractor of a government-owned ordnance installation, filed suit to recover taxes paid under protest. The court considered whether Day & Zimmermann acted as an independent contractor or whether it was an agent of the United States government exempt from the sales taxes at issue. *Id.* at 109. The court noted that, in procuring goods and services pursuant to its government contract, Day & Zimmermann purchased materials in its own

8

name and on its own credit and that the government was not bound by its purchase contracts. *Id.* The court concluded that Day & Zimmermann assumed the status of an independent contractor and was not an agent of the federal government.[4] *Id.*

GEO argues that *Day & Zimmermann* is not applicable because it looked only to agency factors and failed to consider instrumentality status. However, the governing statute in *Day & Zimmermann* was the predecessor statute for section 151.309 of the Texas Tax Code and provided certain tax exemptions for "agencies and instrumentalities" of the federal and state governments. *See* Act of Sept. 9, 1969, 61st Leg., 2d C.S., ch. 1, 1969 Tex. Gen. Laws 61, 75 (current version at TEX. TAX CODE § 151.309) ("There are exempted from the computation of the amount of the taxes imposed by this Chapter, the receipts from the sale, lease or rental of any taxable items to, or the storage, use or other consumption of taxable items by: (1) The United States, its unincorporated agencies and instrumentalities . . . (3) The State of Texas, its unincorporated agencies and instrumentalities.").

As shown in *New Mexico* and *Day & Zimmermann*, courts consider principal-agent factors when determining the applicability of tax exemptions for "agencies and instrumentalities" of the government. These cases demonstrate that proof of instrumentality status cannot be reduced to mere contractor status, but rather requires that the entity seeking immunity from taxation be so closely aligned with the government that it stands in the government's shoes. *New Mexico*, 455 U.S. at 736.

---

[4] The court found that Day & Zimmermann's transactions fell within the sale-for-resale tax exemption.

Although GEO houses federal detainees, a function closely identified with the government, and must comply with specific government regulations while carrying out its responsibilities, GEO is a distinct entity engaged in commercial, for-profit activities. *See Novoa v. GEO Grp., Inc.*, No. EDCV 17-2514 JGB, 2022 U.S. Dist. LEXIS 25045, at *69 (C.D. Cal., Jan. 25, 2022) ("That ICE outsources work to private detention facilities like GEO does not make federal contractors instrumentalities, particularly as the latter pursue their 'own private ends – in connection with commercial activities carried on for profit.'") (quoting *United States v. Boyd*, 378 U.S. 39, 44, 84 S. Ct. 1518, 12 L. Ed. 2d 713 (1964)). GEO is not controlled by the federal or state government, nor does it contract exclusively with the federal or state government. GEO has a substantial independent role in procuring and managing its property. GEO exercises its own discretion in managing its daily operations. For example, GEO has the discretion to conduct strip searches and discretion to place detainees in a "dry cell" if it deems those actions are warranted.[5] GEO's government clients do not control the means, methods, and details of GEO's work. GEO's agreements with the government clients addressed the end result to be achieved and GEO was compensated at a flat daily rate, $57 per detainee per day, to achieve that result.

Considering these facts and bearing in mind that exemptions are construed against the taxpayer, we conclude that GEO has not established that it is an agency or instrumentality of the federal or state government immune from the payment of state tax.

---

[5] In a "dry cell," detainees are deprived of access to a toilet or sink until they pass any contraband they are suspected of ingesting.

10

In a related argument, GEO contends that the trial court's findings of fact numbered 19, 20, and 21 should be set aside because the overwhelming weight of evidence establishes that GEO operated as an instrumentality of its government clients. GEO asserts there is no dispute that it "was performing services for the Government Clients" and that those services related to an "inherently governmental function." GEO's argument is thus premised on the trial court's alleged failure to define "instrumentality" as an entity performing an inherently governmental function. GEO's desired definition of "instrumentality" is based on *Correct Care*, a case determining the scope of the Vermont Public Records Act. *Correct Care*, 263 A.3d at 1264–67. For the reasons set forth above, we are unpersuaded that this definition should apply in this case. We conclude that findings of fact 19, 20, and 21 are supported by the record.

Burden of Proof

In its findings of fact and conclusions of law, the trial court entered a conclusion that GEO failed to meet its burden to show by "clear and convincing evidence" that it purchased items on behalf of its government clients pursuant to a principal-agent relationship. In its final argument, GEO asserts that the trial court erred in improperly imposing upon GEO a burden to prove its entitlement to relief by clear and convincing evidence in a trial de novo.

"Trial de novo means that the reviewing court will try 'each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision.'" *Hegar v. J.D. Fields & Co.*, 604 S.W.3d 120, 124 (Tex. App.—Austin 2020, pet. denied) (quoting Tex. Gov't Code Ann. § 2001.173(a)). GEO argues that in its trial de novo, the trial court was barred from applying the clear and

convincing evidence standard established in Rule 3.322. *See* 34 TEX. ADMIN. CODE § 3.322(a)(2) (organization seeking tax-exempt status "must show by clear and convincing evidence that it meets the requirements of this section and the relevant statutes").

GEO has cited no cases holding that a trial court is precluded from applying the standard established in Rule 3.322 in a tax exemption case tried de novo. The decision on which GEO relies, *GATX Terminals Corp. v. Rylander*, 78 S.W.3d 630, 633 (Tex. App.—Austin 2002, no pet.) (op. on reh'g), is distinguishable as it does not involve application of Rule 3.322. In short, GEO has not directed us to authority that supports its argument that the clear and convincing standard established in Rule 3.322(a)(2) does not apply in a trial de novo.

Because we conclude that GEO has failed to meet its burden to show that the trial court applied an incorrect evidentiary standard, we overrule GEO's final issue.

## CONCLUSION

Having rejected GEO's arguments, we affirm the judgment of the trial court.

Judy C. Parker
Justice