TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00675-CV






Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of
the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants


v.


Health Care Service Corporation, A Mutual Legal Reserve Company, Successor to Blue
Cross and Blue Shield of Texas, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. D-1-GN-08-001771, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellee Blue Cross and Blue Shield of Texas, Inc. ("Blue Cross") (1) filed suit against
Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State
of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "the Comptroller")
seeking a refund of sales tax assessed on its purchase of items used to perform three federal
government contracts. Blue Cross claimed it was entitled to a refund on grounds related to
the tax code's sale-for-resale exemption. Following a bench trial, the trial court rendered
judgment in Blue Cross's favor and awarded it $1,125,570.43 plus interest. This appeal followed. 
In three issues, the Comptroller asserts that (1) as a matter of law, the sale-for-resale exemption does
not apply to the Blue Cross purchases in question; (2) there is no evidence that any taxable items
were "resold" to the federal government as a matter of state contract law; and (3) there is no evidence
to support the district court's determination that Blue Cross did not receive an impermissible
"double-recovery" by virtue of receiving both a sales tax refund and reimbursement of sales tax
payments from the federal government. We will affirm the district court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Blue Cross is a private insurance carrier that entered into separate contracts with
the federal government to administer three different federal health insurance programs. The
first two contracts were with the United States Department of Health and Human Services (HHS)
and concerned the administration of federal programs known as "Medicare Part A" and "Medicare
Part B." These contracts required Blue Cross to perform a variety of specific functions related to the
Medicare programs, including reviewing claims and, as appropriate, paying claims using money from
the government's trust fund. HHS was obligated to pay the costs of Blue Cross's claims
administration. The third contract was with the United States Office of Personnel Management
(OPM) and involved the administration of the Federal Employees Health Benefit Program (FEP). 
This contract required Blue Cross to provide health care plans for federal employees, including
enrollment, claims review, and payment of benefits. The OPM was obligated to reimburse
Blue Cross for certain costs it incurred in administering the FEP.

 During the refund period--January 1, 1999 through December 31, 2003--Blue Cross
paid sales tax on various taxable items it purchased in connection with its performance of the
three contracts. The parties stipulated to the following eight categories of tangible personal property
and services that Blue Cross acquired and specific amounts of sales tax at issue for each type of
transaction, totaling $1,125,570.43:

 (1) Utilities (purchases of gas and electricity);

 (2) Taxable services on tangible personal property;

 (3) Taxable services on real property;

 (4) Allowable (purchases of tangible personal property such as office supplies and
furniture);


 (5) Leases (leases of office equipment and items such as telephones and postage
machines);

 

 (6) Maintenance on tangible personal property;


 (7) Maintenance on real property; and


 (8) Software/software maintenance.


Blue Cross maintained that it was entitled to a refund of the sales taxes it had paid on these
purchases because they fell within the tax code's sale-for-resale exemption from the sales and use
tax. See Tex. Tax Code Ann. § 151.302 (West 2008) ("The sale for resale of a taxable item is
exempted from the taxes imposed by this chapter."). According to Blue Cross, the "resale" occurred
by operation of title-passage provisions of the Federal Acquisition Regulations (FAR), see 48 C.F.R.
§ 1.101 (1997), that were incorporated into each of the three contracts. The two Medicare contracts
incorporated FAR 52.245-5(c):

 (1) The Government shall retain title to all Government-furnished property.

 (2) Title to all property purchased by the Contractor for which the Contractor is
entitled to be reimbursed as a direct item of cost under this contract shall pass
to and vest in the Government upon the vendor's delivery of such property.


Id. § 52.245-5(c). The FEP contract incorporated FAR 52.245-2(c):

 

 (1) The Government shall retain title to all Government-furnished property.


 (2) All Government-furnished property and all property acquired by the
Contractor, title to which vests in the Government under this paragraph
(collectively referred to as Government property), are subject to the
provisions of this clause. However, special tooling accountable to this
contract is subject to the provisions of the Special Tooling clause and is not
subject to the provisions of this clause. . . .


 . . . .


 (4) If this contract contains a provision directing the Contractor to purchase
material for which the Government will reimburse the Contractor as a direct
item of cost under this contract--


 (i) Title to material purchased from a vendor shall pass to and vest in the
Government upon the vendor's delivery of such material; and


 (ii) Title to all other material shall pass to and vest in the Government
upon--


 (A) Issuance of the material for use in contract performance;

 (B) Commencement of processing of the material or its use in
contract performance; or

 (C) Reimbursement of the cost of the material by the
Government, whichever occurs first.


Id. § 52.245-2(c) (emphasis added). Blue Cross asserted that its purchases of each of the eight
categories of tangible personal property and taxable services in connection with its performance of
the three contracts constituted "sales" of "tangible personal property or a taxable service to a
purchaser who acquires the property or service for the purpose of reselling it . . . in the normal course
of business in the form or condition in which it is acquired or as an attachment to or integral part of
other tangible personal property or taxable service," so as to fall within the sale-for-resale exemption. 
See Tex. Tax Code Ann. §§ 151.006(a)(1) (defining "sale for resale"), .302 (creating sale-for-resale
exemption).

 The Comptroller denied Blue Cross's refund requests, concluding that the
sale-for-resale exemption did not apply. After unsuccessfully pursuing administrative appeals of the
Comptroller's denial of the refund claims, Blue Cross filed suit under tax code section 112.151. See
id. § 112.151 (West 2008). After a bench trial, the district court rendered judgment ordering the
Comptroller to issue one or more refund warrants to Blue Cross in the total amount of the refund
sought--$1,125,570.43--along with statutory interest, see id. § 112.155(c) (West 2008), and entered
findings of fact and conclusions of law supporting the judgment. This appeal followed.


DISCUSSION

 In three issues, the Comptroller contends that (1) as a matter of law, the sale-for-resale
exemption does not apply to the Blue Cross purchases in question; (2) there is no evidence that any
taxable items were "resold," as a matter of state contract law, to the federal government by operation
of the FAR title-passage clauses; and (3) no evidence supports the district court's findings that Blue
Cross did not obtain a double recovery by receiving both a refund for its sales-tax payments and
reimbursement from the federal government. This appeal involves the same parties and issues that
were before this Court in Combs v. Health Care Servs. Corp., No. 03-09-00617, 2011 WL 1005419
(Tex. App.--Austin Mar. 16, 2011, pet. filed.) (mem. op.) ("Blue Cross I"). The parties agree that
the facts of this appeal are "essentially the same" as those presented in Blue Cross I but that this case
involves a later refund period--January 1, 1999 through December 31, 2003. (2) This case involves
the same contracts, statutes, procurement functions, and essentially the same types of goods and
services that were the subject of Blue Cross I. (3) Because our decision in Blue Cross I resolves each
of the issues raised in this appeal, we will not lengthen this opinion by reiterating all the reasons for
our holdings. We instead briefly summarize each issue and our disposition.


Application of the Sale-for-Resale Exemption

 The Comptroller first contends that Blue Cross sold the federal government only
non-taxable administrative services rather than tangible personal property or taxable services. The
Comptroller maintains that, like any seller of non-taxable services, Blue Cross owes tax on all items
purchased to provide these services and cannot claim the sale-for-resale exemption. According to
the Comptroller, even if title to some taxable items passed to the federal government by operation
of the title-passage provisions of the FAR, such passage of title was merely "incidental" to Blue
Cross's sale of non-taxable services, and does not constitute a "resale" of the taxable items
themselves. The Comptroller also argues that, because the federal contracts do not require Blue
Cross to purchase the taxable items, the purchase of those items was "incidental" to Blue Cross's
performance of non-taxable services, and therefore the exemption does not apply. This Court
addressed each of these arguments in its opinion in Blue Cross I. We conclude in this case, as we
did in Blue Cross I, that even accepting the Comptroller's contention that Blue Cross provided
non-taxable administrative services to the federal government, Blue Cross also conveyed tangible
personal property to the federal government under the FAR clauses, and nothing in the sale-for-resale
exemption states that Blue Cross must be found "to have done only one and not the other for
purposes of the exemption." See Blue Cross I, 2011 WL 1005419, at *6. Nothing in the tax code
indicates that Blue Cross must have been obligated to purchase the taxable items in order for a resale
to occur. Id.

 Next, the Comptroller argues that the sale-for-resale exemption requires both
a qualified "seller" (i.e., reseller) and a qualified "purchaser." According to the Comptroller,
Blue Cross is neither because it does not sell "taxable items," see Tex. Tax Code Ann. § 151.008(a)
(West 2008) (definition of "seller"), and because it is not "in the business of selling, leasing, or
renting taxable items" and could not issue a resale certificate, see Tex. Tax Code Ann. § 151.054(b)
(West 2008) (describing type of "purchaser" required for exemption). This Court in Blue Cross I
observed that this argument simply restates the Comptroller's assertions that Blue Cross only sold
non-taxable administrative services, an argument it had already rejected. See Blue Cross I, 
2011 WL 1005419, at *7. As we did in Blue Cross I, we hold that because, in performing its
contracts with the federal government, Blue Cross purchased taxable items and was in the business
of selling them to the federal government, it falls within the definitions of both "seller" and of
"purchaser." Id.

 Relying on East Texas Oxygen Co. v. State, 681 S.W.2d 741, 745 (Tex. App.--Austin
1984, no writ), the Comptroller next argues that the sale-for-resale exemption does not apply to Blue
Cross's purchases because the "resale" was not taxable. In Blue Cross I, this Court rejected the
Comptroller's argument that East Texas Oxygen stands for the broad proposition that a
taxpayer cannot qualify for the sale-for-resale exemption if the resale is ultimately not taxed. See
Blue Cross I, 2011 WL 1005419, at *7-8. The fact that the ultimate "resale" of a taxable item falls
within another exemption and is therefore not taxed does not control whether the sale-for-resale
exemption can apply to the reseller's purchase of items that fall within the statutory definition of
"taxable item." See id. (citing Day & Zimmerman, Inc. v. Calvert, 519 S.W.2d 106, 110 (Tex.
1975)); 7-Eleven, Inc. v. Combs, 311 S.W.3d 676, 690 (Tex. App.--Austin 2010, pet. dism'd) ("The
sale-for-resale statute simply requires that the service to which the transfer of tangible personal
property is integral be a taxable service--not that it actually be taxed in the particular instance in
question."); see also Tex. Tax Code Ann. §§ 151.009-.0101 (West 2008). Although the policy goal
underlying the sale-for-resale exemption--avoiding the "pyramiding" of sales tax on successive
transactions preceding sale to the ultimate purchaser--is not here implicated, we are bound to apply
the exemption as written. Blue Cross I, 2011 WL 1005419, at *8.

 Finally, the Comptroller argues that even if the sale-for-resale exemption applies to
the two categories comprising purchases of tangible personal property--"utilities" (purchases of gas
and electricity) and "allowable" (purchases of tangible personal property such as office supplies and
furniture)--it does not apply to the remaining six categories, which the Comptroller contends are
composed of intangibles and taxable services. The Comptroller maintains that the FAR title-passage
provisions apply only to tangible personal property, not intangibles and services, and consequently
they do not operate to effect a "resale" of the items contained in these categories. With respect to
taxable services, the Comptroller's argument ignores the fact that the sale-for-resale exemption does
not require a transfer of title or possession in every transaction. In the case of taxable services, a sale
occurs upon performance of the taxable service. See Tex. Tax Code Ann. § 151.005(3) (West 2008). 
In the present case, the district court made a finding of fact, unchallenged by the Comptroller, that
the taxable services in three categories--taxable services on tangible personal property, maintenance
on tangible personal property, and software/software maintenance--were "performed for the benefit
of the federal government on tangible personal property owned by the federal government." Also
unchallenged by the Comptroller is the district court's finding that the taxable services in two other
categories--taxable services on real property and maintenance on real property--were "performed
for the benefit of the federal government on tangible real property owned by the federal
government." Accordingly, Blue Cross "resold" the services and maintenance at issue in this case
when it performed those services, irrespective of the applicability of the FAR title-passing
provisions. See Blue Cross I, 2011 WL 1005419, at *8. (4)

 With regard to the remaining categories--leases and any non-services component of
the category software/software maintenance--the district court made a finding, which the
Comptroller does not challenge, that Blue Cross transferred the rights in the leases and software
licenses to the federal government. This transfer of title or possession to the federal government
constitutes a resale under the tax code. See id.

 We overrule the Comptroller's first appellate issue.


Evidence of Resale

 In her second issue, the Comptroller asserts that there is no evidence of a resale of the
items for which Blue Cross claims a loss. As we stated in Blue Cross I, whether a taxable item is
"sold" or "resold" is ultimately a question of law turning on construction of the tax code, or a mixed
question of law and fact turning on application of the tax code to the factual record. See id. at *9. 
The Comptroller contends that there was no resale under state contract law because a sale under the
tax code requires passage of title and a transfer for consideration. To prevail on her assertion that
there is no evidence of a resale, the Comptroller has the burden of demonstrating: (1) the complete
absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. 
See City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). We must consider all of the
evidence in the light most favorable to the fact finding and indulge every reasonable inference that
would support it. Id. at 822.

 The tax code defines "sale" as follows:

 "Sale" . . . means any of the following when done or performed for consideration:

 (1) a transfer of title or possession of tangible property;

 (2) the exchange, barter, lease, or rental of tangible personal property;

 (3) the performance of a taxable service [or] the charge for an extended warranty
or service contract for the performance of a taxable service . . . . 

 

Tex. Tax Code Ann. § 151.005. As this Court explained in Blue Cross I, the supreme court has held
that the transfer of title pursuant to the FAR title-passing provisions constitutes a sale under a former
version of section 151.005. See Day & Zimmerman, 519 S.W.2d at 110. And this Court has held
that a taxpayer "resold" items to the federal government by virtue of the FAR title-passing provisions
in the contract. See Strayhorn v. Raytheon, 101 S.W.3d 558, 570 (Tex. App.--Austin 2003, pet.
denied). Accordingly, Blue Cross "resold" the taxable items if it purchased the tangible personal
property and taxable services pursuant to the terms of contracts subject to the FAR title-passing
clauses. See Blue Cross I, 2011 WL 1005419, at *10. And under the tax code's definition of sale
of services, Blue Cross "resold" the services at issue here if it performed those services. See Tex.
Tax Code Ann. § 151.005(3). We need look no further than the following stipulation by the parties
to conclude that these conditions have been met:

 Blue Cross purchased tangible personal property and services during the Refund
Period . . . that were directly and indirectly charged or allocated by Blue Cross to
agencies of the federal government under three contracts containing title-passing
Federal Acquisition Regulation clauses . . . . 


This stipulation supports the district court's conclusion that Blue Cross sold the tangible personal
property and services at issue here to the federal government. (5)

 Considering the evidence in the light most favorable to the judgment and indulging
every reasonable inference that would support the district court's finding, we conclude that a
reasonable and fair-minded person could conclude that Blue Cross purchased the taxable items at
issue here and subsequently sold those same items to the federal government either when title passed
pursuant to the FAR clauses in the three contracts or when the services were performed. The
evidence is therefore legally sufficient to support the district court's finding that there was a resale. 
We overrule the Comptroller's second issue.


Double Recovery

 In her third issue, the Comptroller complains that Blue Cross failed to present legally
sufficient evidence that none of the refunds sought would result in a double-recovery prohibited by
the tax code. Relying on tax code section 111.104(f), the Comptroller contends that to meet its
burden, Blue Cross was required to present evidence of each individual purchase or resale at issue
demonstrating, transaction by transaction, that it did not collect tax from the federal government. 
See Tex. Tax Code Ann. § 111.104(f) (West 2008). This Court rejected the same argument in Blue
Cross I, concluding that nothing in tax code section 111.104(f) imposes such a burden on Blue
Cross. See Blue Cross I, 2011 WL 1005419, at *14. Rather, section 111.104(f) merely provides that
"a person who has collected the taxes from another person" is not entitled to a refund unless that
person refunds those collected taxes. See Tex. Tax Code Ann. § 111.104(f) (emphasis added). As
in Blue Cross I, the undisputed and uncontradicted evidence in the record is that Blue Cross never
collected sales tax from the federal government. We overrule the Comptroller's third issue. 


CONCLUSION

 Having overruled the Comptroller's three appellate issues, we affirm the district
court's judgment.


 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: July 7, 2011
1. Appellee Health Care Service Corporation is, by merger, the successor to Blue Cross. We
will refer to both entities as "Blue Cross."
2. Blue Cross I involved the time period from December 1, 1988 through December 31, 1998.
3. In Blue Cross I, Blue Cross sought a refund for sales taxes it paid on purchases of
"capitalized assets," a category not at issue in this case. And in the present case, Blue Cross seeks
a refund for sales taxes associated with two categories not at issue in Blue Cross I--"taxable services
on real property" and "maintenance on real property." The Comptroller has not raised any issue
unique to these two categories in this appeal, and these differences are not material to its outcome.
4. The Comptroller also argues that if the underlying property is not eligible for the sale-for-resale exemption, then the services to that property are likewise not entitled to the exemption. 
Because we have concluded that the underlying property does fall within the sale-for-resale
exemption, we need not address this argument. We note, however, that the district court found that
the taxable services were tax exempt for a second reason--they were performed on property owned
by the federal government. See Tex. Tax Code Ann. §§ 151.3111(a), .309(1) (West 2008). This
exemption does not require that the property be "resold" to the government, only that it is owned by
the federal government at the time the services were performed. Relatedly, the Comptroller contends
that Blue Cross failed to establish that it sought reimbursement for all of the tangible property for
which services were performed. We understand the Comptroller to mean that the services may have
been performed on property that was not owned by the federal government. The district court
concluded, however, that Blue Cross sold the tangible personal property at issue here to the federal
government. The parties stipulated that:


 Blue Cross purchased tangible personal property and services during the Refund
Period . . . that were directly and indirectly charged or allocated by Blue Cross to
agencies of the federal government under three contracts containing title-passing
Federal Acquisition Regulation clauses . . . .


This stipulation alone is sufficient to support the district court's conclusion. See Blue Cross I, 2011
WL 1005419, at *10 (considering identical stipulation). 
5. For the sake of brevity, we do not catalogue the record evidence that also supports the
district court's conclusion. The record contains evidence that the three contracts contained FAR
title-passing provisions, that Blue Cross's refund claims covered property purchased and sold to the
federal government under the three contracts, that Blue Cross performed the services and
maintenance on government property, and that everything purchased under the three contracts was
treated as government property under the FAR provisions.