# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00675-CV

**Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants**

**v.**

**Health Care Service Corporation, A Mutual Legal Reserve Company, Successor to Blue Cross and Blue Shield of Texas, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-08-001771, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Blue Cross and Blue Shield of Texas, Inc. ("Blue Cross")[1] filed suit against Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "the Comptroller") seeking a refund of sales tax assessed on its purchase of items used to perform three federal government contracts. Blue Cross claimed it was entitled to a refund on grounds related to the tax code's sale-for-resale exemption. Following a bench trial, the trial court rendered judgment in Blue Cross's favor and awarded it $1,125,570.43 plus interest. This appeal followed. In three issues, the Comptroller asserts that (1) as a matter of law, the sale-for-resale exemption does

---

[1] Appellee Health Care Service Corporation is, by merger, the successor to Blue Cross. We will refer to both entities as "Blue Cross."

not apply to the Blue Cross purchases in question; (2) there is no evidence that any taxable items were "resold" to the federal government as a matter of state contract law; and (3) there is no evidence to support the district court's determination that Blue Cross did not receive an impermissible "double-recovery" by virtue of receiving both a sales tax refund and reimbursement of sales tax payments from the federal government. We will affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Blue Cross is a private insurance carrier that entered into separate contracts with the federal government to administer three different federal health insurance programs. The first two contracts were with the United States Department of Health and Human Services (HHS) and concerned the administration of federal programs known as "Medicare Part A" and "Medicare Part B." These contracts required Blue Cross to perform a variety of specific functions related to the Medicare programs, including reviewing claims and, as appropriate, paying claims using money from the government's trust fund. HHS was obligated to pay the costs of Blue Cross's claims administration. The third contract was with the United States Office of Personnel Management (OPM) and involved the administration of the Federal Employees Health Benefit Program (FEP). This contract required Blue Cross to provide health care plans for federal employees, including enrollment, claims review, and payment of benefits. The OPM was obligated to reimburse Blue Cross for certain costs it incurred in administering the FEP.

During the refund period—January 1, 1999 through December 31, 2003—Blue Cross paid sales tax on various taxable items it purchased in connection with its performance of the three contracts. The parties stipulated to the following eight categories of tangible personal property

2

and services that Blue Cross acquired and specific amounts of sales tax at issue for each type of transaction, totaling $1,125,570.43:

(1) Utilities (purchases of gas and electricity);

(2) Taxable services on tangible personal property;

(3) Taxable services on real property;

(4) Allowable (purchases of tangible personal property such as office supplies and furniture);

(5) Leases (leases of office equipment and items such as telephones and postage machines);

(6) Maintenance on tangible personal property;

(7) Maintenance on real property; and

(8) Software/software maintenance.

Blue Cross maintained that it was entitled to a refund of the sales taxes it had paid on these purchases because they fell within the tax code's sale-for-resale exemption from the sales and use tax. *See* Tex. Tax Code Ann. § 151.302 (West 2008) ("The sale for resale of a taxable item is exempted from the taxes imposed by this chapter."). According to Blue Cross, the "resale" occurred by operation of title-passage provisions of the Federal Acquisition Regulations (FAR), *see* 48 C.F.R. § 1.101 (1997), that were incorporated into each of the three contracts. The two Medicare contracts incorporated FAR 52.245-5(c):

(1) The Government shall retain title to all Government-furnished property.

(2) Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the vendor's delivery of such property.

3

*Id.* § 52.245-5(c). The FEP contract incorporated FAR 52.245-2(c):

(1) The Government shall retain title to all Government-furnished property.

(2) All Government-furnished property and all property acquired by the Contractor, title to which vests in the Government under this paragraph (collectively referred to as Government property), are subject to the provisions of this clause. However, special tooling accountable to this contract is subject to the provisions of the Special Tooling clause and is not subject to the provisions of this clause. . . .

. . . .

(4) If this contract contains a provision directing the Contractor to purchase material for which the Government will reimburse the Contractor as a direct item of cost under this contract—

(i) Title to material purchased from a vendor shall pass to and vest in the Government upon the vendor's delivery of such material; and

(ii) Title to all other material *shall* pass to and vest in the Government upon—

(A) Issuance of the material for use in contract performance;
(B) Commencement of processing of the material or its use in contract performance; or
(C) Reimbursement of the cost of the material by the Government, whichever occurs first.

*Id.* § 52.245-2(c) (emphasis added). Blue Cross asserted that its purchases of each of the eight categories of tangible personal property and taxable services in connection with its performance of the three contracts constituted "sales" of "tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it . . . in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service," so as to fall within the sale-for-resale exemption.

4

*See* Tex. Tax Code Ann. §§ 151.006(a)(1) (defining "sale for resale"), .302 (creating sale-for-resale exemption).

The Comptroller denied Blue Cross's refund requests, concluding that the sale-for-resale exemption did not apply. After unsuccessfully pursuing administrative appeals of the Comptroller's denial of the refund claims, Blue Cross filed suit under tax code section 112.151. *See id.* § 112.151 (West 2008). After a bench trial, the district court rendered judgment ordering the Comptroller to issue one or more refund warrants to Blue Cross in the total amount of the refund sought—$1,125,570.43—along with statutory interest, *see id*. § 112.155(c) (West 2008), and entered findings of fact and conclusions of law supporting the judgment. This appeal followed.

## DISCUSSION

In three issues, the Comptroller contends that (1) as a matter of law, the sale-for-resale exemption does not apply to the Blue Cross purchases in question; (2) there is no evidence that any taxable items were "resold," as a matter of state contract law, to the federal government by operation of the FAR title-passage clauses; and (3) no evidence supports the district court's findings that Blue Cross did not obtain a double recovery by receiving both a refund for its sales-tax payments and reimbursement from the federal government. This appeal involves the same parties and issues that were before this Court in *Combs v. Health Care Servs. Corp.*, No. 03-09-00617, 2011 WL 1005419 (Tex. App.—Austin Mar. 16, 2011, pet. filed.) (mem. op.) ("*Blue Cross I*"). The parties agree that the facts of this appeal are "essentially the same" as those presented in *Blue Cross I* but that this case

5

involves a later refund period—January 1, 1999 through December 31, 2003.[2] This case involves the same contracts, statutes, procurement functions, and essentially the same types of goods and services that were the subject of *Blue Cross I*.[3] Because our decision in *Blue Cross I* resolves each of the issues raised in this appeal, we will not lengthen this opinion by reiterating all the reasons for our holdings. We instead briefly summarize each issue and our disposition.

### *Application of the Sale-for-Resale Exemption*

The Comptroller first contends that Blue Cross sold the federal government only non-taxable administrative services rather than tangible personal property or taxable services. The Comptroller maintains that, like any seller of non-taxable services, Blue Cross owes tax on all items purchased to provide these services and cannot claim the sale-for-resale exemption. According to the Comptroller, even if title to some taxable items passed to the federal government by operation of the title-passage provisions of the FAR, such passage of title was merely "incidental" to Blue Cross's sale of non-taxable services, and does not constitute a "resale" of the taxable items themselves. The Comptroller also argues that, because the federal contracts do not require Blue Cross to purchase the taxable items, the purchase of those items was "incidental" to Blue Cross's performance of non-taxable services, and therefore the exemption does not apply. This Court addressed each of these arguments in its opinion in *Blue Cross I*. We conclude in this case, as we

---

[2] *Blue Cross I* involved the time period from December 1, 1988 through December 31, 1998.

[3] In *Blue Cross I*, Blue Cross sought a refund for sales taxes it paid on purchases of "capitalized assets," a category not at issue in this case. And in the present case, Blue Cross seeks a refund for sales taxes associated with two categories not at issue in *Blue Cross I*—"taxable services on real property" and "maintenance on real property." The Comptroller has not raised any issue unique to these two categories in this appeal, and these differences are not material to its outcome.

did in *Blue Cross I*, that even accepting the Comptroller's contention that Blue Cross provided non-taxable administrative services to the federal government, Blue Cross also conveyed tangible personal property to the federal government under the FAR clauses, and nothing in the sale-for-resale exemption states that Blue Cross must be found "to have done only one and not the other for purposes of the exemption." *See Blue Cross I*, 2011 WL 1005419, at *6. Nothing in the tax code indicates that Blue Cross must have been obligated to purchase the taxable items in order for a resale to occur. *Id.*

Next, the Comptroller argues that the sale-for-resale exemption requires both a qualified "seller" (i.e., reseller) and a qualified "purchaser." According to the Comptroller, Blue Cross is neither because it does not sell "taxable items," *see* Tex. Tax Code Ann. § 151.008(a) (West 2008) (definition of "seller"), and because it is not "in the business of selling, leasing, or renting taxable items" and could not issue a resale certificate, *see* Tex. Tax Code Ann. § 151.054(b) (West 2008) (describing type of "purchaser" required for exemption). This Court in *Blue Cross I* observed that this argument simply restates the Comptroller's assertions that Blue Cross only sold non-taxable administrative services, an argument it had already rejected. *See Blue Cross I*, 2011 WL 1005419, at *7. As we did in *Blue Cross I*, we hold that because, in performing its contracts with the federal government, Blue Cross purchased taxable items and was in the business of selling them to the federal government, it falls within the definitions of both "seller" and of "purchaser." *Id.*

Relying on *East Texas Oxygen Co. v. State*, 681 S.W.2d 741, 745 (Tex. App.—Austin 1984, no writ), the Comptroller next argues that the sale-for-resale exemption does not apply to Blue

7

Cross's purchases because the "resale" was not taxable. In *Blue Cross I*, this Court rejected the Comptroller's argument that *East Texas Oxygen* stands for the broad proposition that a taxpayer cannot qualify for the sale-for-resale exemption if the resale is ultimately not taxed. *See Blue Cross I*, 2011 WL 1005419, at *7-8. The fact that the ultimate "resale" of a taxable item falls within another exemption and is therefore not taxed does not control whether the sale-for-resale exemption can apply to the reseller's purchase of items that fall within the statutory definition of "taxable item." *See id.* (citing *Day & Zimmerman, Inc. v. Calvert*, 519 S.W.2d 106, 110 (Tex. 1975)); *7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 690 (Tex. App.—Austin 2010, pet. dism'd) ("The sale-for-resale statute simply requires that the service to which the transfer of tangible personal property is integral be a *taxable* service—not that it actually be *taxed* in the particular instance in question."); *see also* Tex. Tax Code Ann. §§ 151.009-.0101 (West 2008). Although the policy goal underlying the sale-for-resale exemption—avoiding the "pyramiding" of sales tax on successive transactions preceding sale to the ultimate purchaser—is not here implicated, we are bound to apply the exemption as written. *Blue Cross I*, 2011 WL 1005419, at *8.

Finally, the Comptroller argues that even if the sale-for-resale exemption applies to the two categories comprising purchases of tangible personal property—"utilities" (purchases of gas and electricity) and "allowable" (purchases of tangible personal property such as office supplies and furniture)—it does not apply to the remaining six categories, which the Comptroller contends are composed of intangibles and taxable services. The Comptroller maintains that the FAR title-passage provisions apply only to tangible personal property, not intangibles and services, and consequently they do not operate to effect a "resale" of the items contained in these categories. With respect to

8

taxable services, the Comptroller's argument ignores the fact that the sale-for-resale exemption does not require a transfer of title or possession in every transaction. In the case of taxable services, a sale occurs upon performance of the taxable service. *See* Tex. Tax Code Ann. § 151.005(3) (West 2008). In the present case, the district court made a finding of fact, unchallenged by the Comptroller, that the taxable services in three categories—taxable services on tangible personal property, maintenance on tangible personal property, and software/software maintenance—were "performed for the benefit of the federal government on tangible personal property owned by the federal government." Also unchallenged by the Comptroller is the district court's finding that the taxable services in two other categories—taxable services on real property and maintenance on real property—were "performed for the benefit of the federal government on tangible real property owned by the federal government." Accordingly, Blue Cross "resold" the services and maintenance at issue in this case when it performed those services, irrespective of the applicability of the FAR title-passing provisions. *See Blue Cross I*, 2011 WL 1005419, at *8.[4]

---

[4] The Comptroller also argues that if the underlying property is not eligible for the sale-for-resale exemption, then the services to that property are likewise not entitled to the exemption. Because we have concluded that the underlying property does fall within the sale-for-resale exemption, we need not address this argument. We note, however, that the district court found that the taxable services were tax exempt for a second reason—they were performed on property owned by the federal government. *See* Tex. Tax Code Ann. §§ 151.3111(a), .309(1) (West 2008). This exemption does not require that the property be "resold" to the government, only that it is owned by the federal government at the time the services were performed. Relatedly, the Comptroller contends that Blue Cross failed to establish that it sought reimbursement for *all* of the tangible property for which services were performed. We understand the Comptroller to mean that the services may have been performed on property that was not owned by the federal government. The district court concluded, however, that Blue Cross sold the tangible personal property at issue here to the federal government. The parties stipulated that:

Blue Cross purchased tangible personal property and services during the Refund

9

With regard to the remaining categories—leases and any non-services component of the category software/software maintenance—the district court made a finding, which the Comptroller does not challenge, that Blue Cross transferred the rights in the leases and software licenses to the federal government. This transfer of title or possession to the federal government constitutes a resale under the tax code. *See id.*

We overrule the Comptroller's first appellate issue.

**Evidence of Resale**

In her second issue, the Comptroller asserts that there is no evidence of a resale of the items for which Blue Cross claims a loss. As we stated in *Blue Cross I*, whether a taxable item is "sold" or "resold" is ultimately a question of law turning on construction of the tax code, or a mixed question of law and fact turning on application of the tax code to the factual record. *See id.* at *9. The Comptroller contends that there was no resale under state contract law because a sale under the tax code requires passage of title and a transfer for consideration. To prevail on her assertion that there is no evidence of a resale, the Comptroller has the burden of demonstrating: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.

---

Period . . . that were directly and indirectly charged or allocated by Blue Cross to agencies of the federal government under three contracts containing title-passing Federal Acquisition Regulation clauses . . . .

This stipulation alone is sufficient to support the district court's conclusion. *See Blue Cross I*, 2011 WL 1005419, at *10 (considering identical stipulation).

10

*See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We must consider all of the evidence in the light most favorable to the fact finding and indulge every reasonable inference that would support it. *Id.* at 822.

The tax code defines "sale" as follows:

"Sale" . . . means any of the following when done or performed for consideration:

  (1)    a transfer of title or possession of tangible property;

  (2)    the exchange, barter, lease, or rental of tangible personal property;

  (3)    the performance of a taxable service [or] the charge for an extended warranty or service contract for the performance of a taxable service . . . .

Tex. Tax Code Ann. § 151.005. As this Court explained in *Blue Cross I*, the supreme court has held that the transfer of title pursuant to the FAR title-passing provisions constitutes a sale under a former version of section 151.005. *See Day & Zimmerman*, 519 S.W.2d at 110. And this Court has held that a taxpayer "resold" items to the federal government by virtue of the FAR title-passing provisions in the contract. *See Strayhorn v. Raytheon*, 101 S.W.3d 558, 570 (Tex. App.—Austin 2003, pet. denied). Accordingly, Blue Cross "resold" the taxable items if it purchased the tangible personal property and taxable services pursuant to the terms of contracts subject to the FAR title-passing clauses. *See Blue Cross I*, 2011 WL 1005419, at *10. And under the tax code's definition of sale of services, Blue Cross "resold" the services at issue here if it performed those services. *See* Tex. Tax Code Ann. § 151.005(3). We need look no further than the following stipulation by the parties to conclude that these conditions have been met:

Blue Cross purchased tangible personal property and services during the Refund Period . . . that were directly and indirectly charged or allocated by Blue Cross to

11

agencies of the federal government under three contracts containing title-passing Federal Acquisition Regulation clauses . . . .

This stipulation supports the district court's conclusion that Blue Cross sold the tangible personal property and services at issue here to the federal government.[5]

Considering the evidence in the light most favorable to the judgment and indulging every reasonable inference that would support the district court's finding, we conclude that a reasonable and fair-minded person could conclude that Blue Cross purchased the taxable items at issue here and subsequently sold those same items to the federal government either when title passed pursuant to the FAR clauses in the three contracts or when the services were performed. The evidence is therefore legally sufficient to support the district court's finding that there was a resale. We overrule the Comptroller's second issue.

***Double Recovery***

In her third issue, the Comptroller complains that Blue Cross failed to present legally sufficient evidence that none of the refunds sought would result in a double-recovery prohibited by the tax code. Relying on tax code section 111.104(f), the Comptroller contends that to meet its burden, Blue Cross was required to present evidence of each individual purchase or resale at issue demonstrating, transaction by transaction, that it did not collect tax from the federal government.

---

[5] For the sake of brevity, we do not catalogue the record evidence that also supports the district court's conclusion. The record contains evidence that the three contracts contained FAR title-passing provisions, that Blue Cross's refund claims covered property purchased and sold to the federal government under the three contracts, that Blue Cross performed the services and maintenance on government property, and that everything purchased under the three contracts was treated as government property under the FAR provisions.

*See* Tex. Tax Code Ann. § 111.104(f) (West 2008).  This Court rejected the same argument in *Blue Cross I*, concluding that nothing in tax code section 111.104(f) imposes such a burden on Blue Cross.  *See Blue Cross I*, 2011 WL 1005419, at *14.  Rather, section 111.104(f) merely provides that "a person who has *collected* the taxes from another person" is not entitled to a refund unless that person refunds those *collected* taxes.  *See* Tex. Tax Code Ann. § 111.104(f) (emphasis added).  As in *Blue Cross I*, the undisputed and uncontradicted evidence in the record is that Blue Cross never collected sales tax from the federal government.  We overrule the Comptroller's third issue.

## CONCLUSION

Having overruled the Comptroller's three appellate issues, we affirm the district court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   July 7, 2011